**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **PEDRO MONTES RODRIGUEZ,** | ) | |
| **A#36-592-303,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **3:05-CV-0657-H** |
| | ) | |
| **DORIS MEISSNER, Commissioner of the** | ) | |
| **United States Citizenship & Immigration** | ) | |
| **Services, et al.,** | ) | |
| **Defendants.** | ) | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b), and an order of the District Court filed

on April 6, 2005, the emergency petition for writ of mandamus has been referred to the United

States Magistrate Judge.  The findings, conclusions and recommendation of the Magistrate

Judge, as evidenced by his signature thereto, are as follows:

FINDINGS AND CONCLUSIONS:

Type of Case: Pedro Montes Rodriguez's pleading is denominated as an emergency

petition for writ of mandamus.  He paid $5.00 toward the $250.00 filing fee due for a mandamus

action.[1]

---

[1]    Effective February 7, 2005, the statutory fee prescribed under 28 U.S.C. 1914(a)
for filing any civil action increased to $250.00, except that in an application for a writ of habeas
corpus the filing fee remained at $5.00.  The petition for writ of mandamus in this case does not
stem from a civil commitment proceeding and/or a federal habeas action.  See In re Stone, 118
F.3d 1032, 1034 at n.2 (5th Cir. 1997).  Plaintiff seeks to compel immigration officials to
administer his naturalization oath and also seeks to invoke this court's jurisdiction pursuant to
the Administrative Procedure Act and the Immigration and Nationality Act.  (See infra at 2).  As
a result, this case is subject to the $250.00 filing fee for civil actions.

Parties:  Plaintiff Pedro Montes Rodriguez is represented by retained counsel.  The petition for writ of mandamus does not disclose Plaintiff's whereabouts.  Named as Defendants are Doris Meissner, Commissioner of the United States Citizenship and Immigration Services (CIS), and Angela K. Barrows, CIS District Director.  The court has not issued process in this case.

Statement of Case: The following allegations are presented in Plaintiff's pleadings:

Montes Rodriguez, a native and citizen of Mexico, entered the United States in January 1980 as a legal permanent resident as a result of an application submitted by his father, who had previously become a citizen of the United States.  (Petition at ¶¶ 8 and 10-13, and Application for Naturalization at 1 and 4, attached to petition).  On April 23, 1990, he filed a petition for naturalization, N-400.  (Id. and Application for Naturalization, attached to petition).  On July 31, 1990, he appeared for a naturalization interview and exam and passed the same.  (Petition at ¶¶ 8 and 10-13).  Although fifteen years have passed since the above events, immigration authorities (including the former Immigration and Naturalization Service (INS), as well as the current CIS) have "yet to take action on his application . . . ."  (Id.).

In addition, Plaintiff filed "an N-600 Application for Certificate of Citizenship pursuant to Section 341 of the Immigration and Nationality Act, as amended, on behalf of a child of a United States Citizen" on August 5, 2003.  (Petition at ¶ 14).  The N-600 application was denied, from which Plaintiff filed an appeal.  (Id. at ¶¶ 14-17).

In the instant emergency petition for writ of mandamus, filed on April 5, 2005, Plaintiff alleges that Defendants have a "duty to administer his naturalization oath," and that they have "unreasonably failed to perform that duty" during the last fifteen years  (Petition at ¶ 18).

Specifically, he asserts that CIS's delay in administering his naturalization "is unreasonable per se." (Id. at ¶¶ 18-19). Plaintiff requests that this court "[c]ompel Defendant and those acting under her to perform their duty or duties to administrate his naturalization oath." (Id. at Prayer for Relief ¶ B).

The emergency nature of the petition for writ of mandamus appears to relate to the pendency of deportation proceedings, a matter not addressed in the petition. According to the "post-it" note attached to the petition, an employee of Plaintiff's counsel related to the clerk's office at the time of filing that a deportation hearing is set for April 21, 2005. In light of this information, the office of the undersigned magistrate judge contacted the Dallas Immigration Court to verify the nature and status of any deportation proceedings pending against Plaintiff. The following information was received:

Plaintiff was convicted of a federal drug offense in a federal district court in Louisiana on March 13, 2003. As a result of this aggravated felony conviction, deportation proceedings were initiated and a final deportation hearing is set for April 21, 2005.

Upon further research of the U.S. Party Case Index, the magistrate judge determined that Plaintiff pled guilty to conspiracy to distribute marijuana in United States v. Pedro Rodriguez-Montes, 6:02cr60028-(01) (W.D. Louisiana, Lafayette Div.), and was sentenced to a sixty-month term of imprisonment and a four-year term of supervised release. On January 6, 2005, the convicting court filed an amended judgment effective as of March 13, 2003, re-sentencing Plaintiff to a 30-month term of imprisonment and four-year term of supervised release pursuant to an order of remand from the Fifth Circuit Court of Appeals.

Findings and Conclusions: Plaintiff invokes this court's jurisdiction under "28 U.S.C. §

3

1331 (federal subject matter jurisdiction) in conjunction with 28 U.S.C. § 1361 (mandamus), the

Administrative Procedure Act (APA) (5 U.S.C. § 555(b)), and the Immigration and Nationality

Act and regulations implementing it (Title 8 of the CFR)."

He seeks an order compelling Defendants to administer a naturalization oath along with

other relief.  The Mandamus Act vests district courts with original jurisdiction over "any action

in the nature of mandamus to compel an officer or employee of the United States or any agency

thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  However, mandamus may

only be invoked in extraordinary situations.  Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33,

34, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980).  Mandamus relief is appropriate "only when the

plaintiff's claim is clear and certain and the duty of the officer is ministerial and so plainly

prescribed as to be free from doubt."  Giddings v. Chandler, 979 F.2d 1104, 1108 (5th Cir.

1992); see also Davis v. Fechtel, 150 F.3d 486, 487 (5th Cir. 1998).  A Plaintiff must establish:

(1) that he has a clear right to have his naturalization oath administered; (2) that defendants have

a nondiscretionary duty to administer his naturalization oath; and (3) that he has no other

adequate remedy.  See Allied Chemical, 449 U.S. at 35, 101 S.Ct. at 190 (party seeking

mandamus relief must show "clear and indisputable" right and have no other adequate remedy);

In re Stone, 118 F.3d 1032, 1034 (5th Cir. 1997) (same); Dunn-McCampbell Royalty Interest,

Inc. v. National Park Service, 112 F.3d 1283, 1288 (5th Cir. 1997) (duty must be for specific,

ministerial act, devoid of discretion).

Montes Rodriguez cannot establish that Defendants have a clear duty to administer his

naturalization oath under the facts of this case.  Assuming *arguendo* that he passed his

naturalization exam and that an immigration officer approved his naturalization application

4

fifteen years ago, it does not follow that the oath of citizenship must be administered. Whether

an alien has adequately established that he is of good moral character and, thus, entitled to

naturalization is not a purely ministerial act. "[I]mmigration officials are vested with broad

discretion in making the ultimate decision whether to grant or deny an application for

naturalization . . . ." Alkenani v. Barrows, 356 F.Supp.2d 652, No. 3:04cv1638-BD (N.D. Tex.,

Feb. 14, 2005); see also Sze v. Immigration and Naturalization Service, 1997 WL 446236 at *5-

6, No. C-97-0569-SC (N.D. Cal. Jul 24, 1997) (while INS imposed on itself a 120-day window

in which to complete the naturalization process, the court held that this "duty" was not a

"ministerial duty" as contemplated by the mandamus statute especially in light of Congressional

demand that the backgrounds of naturalization applicants be properly investigated). Therefore,

mandamus relief is unavailable.[2]

---

[2]      Relief under the APA is equally unavailable for discretionary acts such as
determining whether to grant or deny an application for naturalization. The waiver of sovereign
immunity under the APA is not absolute. An aggrieved person may not sue a federal agency
when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); see also
Stockman v. Fed. Election Comm'n, 138 F.3d 144, 153-54 (5th Cir. 1998).
        The facts of this mandamus petition are clearly distinguishable from the following cases
in which immigration officials failed to perform a clearly ministerial duty. See Alkenani v.
Barrows, 356 F.Supp.2d 652, No. 3:04cv1638-BD (N.D. Tex., Feb. 14, 2005) (although CIS
officials had broad discretion in making ultimate decision regarding application for
naturalization, their duty to process application within reasonable time was non-discretionary;
nevertheless mandamus to compel CIS to adjudicate application was unwarranted since delay
was not unreasonable); Harriott v. Ashcroft, 277 F.Supp.2d 538 (E.D. Pa. Jul. 1, 2003) (writ of
mandamus was justified because INS's failure to follow its own internal guidelines by not
processing application on expedited basis, and in denying application because, as a result of its
delay, child had turned 18, had failed to perform ministerial duties to Plaintiffs' detriment
resulting in an Order of Deportation against a young man who was eligible for derivative
citizenship); Pierre v. McElroy, 200 F.Supp.2d 251 (S.D.N.Y. Dec. 4, 2001) (writ of mandamus
was appropriate because Congress had granted Plaintiff a clear right and provided for a
concomitant duty on the part of the INS to adjudicate any I-360 petitions filed before September
11, 2001, on behalf of individuals who had already and would have aged out during the
extension window provided for in the Patriot Act).

Nor can this court exercise independent jurisdiction to order Plaintiff naturalized.  Under section 310 of the INA, the "sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."  8 U.S.C. § 1421(a); see also id. § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter...."); INS v. Pangilinan, 486 U.S. 875, 883-84, 108 S.Ct. 2210, 2217, 100 L.Ed.2d 882 (1988) (holding that the federal courts do not have "the power to make someone a citizen" except to the extent authorized to do so by Congress in the exercise of its exclusive authority over naturalization).  District courts are relegated to reviewing de novo denials of naturalization applications by immigration officers.  See 8 U.S.C. § 1421(c) ("A person whose application for naturalization ... is denied, after a hearing before an immigration officer ..., may seek review of such denial before [a] United States district court.... Such review shall be de novo....").[3]

In any event Plaintiff is not presently eligible for naturalization.  As noted previously, the Immigration Court at Dallas confirmed the statement to the clerk's office that Plaintiff is subject to a final deportation hearing on April 21, 2005.  See id. § 1429 ("[N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a

---

[3]     Plaintiff neither seeks relief nor does he allege that he at any time could have sought relief under 8 U.S.C. § 1447(b), 8 C.F.R. § 310.5 (2005), which creates one of the two specific points at which a district court may intervene in the naturalization process.  That section provides that if immigration authorities fail to render a decision upon an application within 120 days of the applicant's naturalization examination, the applicant may apply to the district court for the district where he resides to conduct a de novo hearing on the application, and the court may then either determine the matter for itself or remand it to immigration authorities.  Moreover, even if this section would have been applicable to Plaintiff, there is nothing in the statute that would have required the court to compel immigration officials to administer the oath of naturalization.

warrant of arrest issued under the [INA]...."); <u>Kembi v. INS</u>, 2001 WL 278187, 8 Fed. Appx.

328 (6th Cir. Mar. 6, 2001) (holding district court could not naturalize Plaintiff while removal

proceedings were pending); <u>Mendonca v. I.N.S.</u>, 52 F.Supp.2d 155, *163-164 (D.Mass. 1999)

(Alien was ineligible for naturalization because an order to show cause charging him with

deportability had been issued) (citing <u>United States v. Ali</u>, 757 F.Supp. 710, 713 (W.D.Va.1991)

(noting that "an order to 'show cause' issued in a deportation proceeding ... is regarded as a

'warrant of arrest' " for purposes of § 1429).[4]

RECOMMENDATION:

    For the foregoing reasons, it is recommended that the District Court deny the emergency

petition for writ of mandamus.

    It is further recommended that the District Court order Plaintiff Montes Rodriguez to pay

$245.00, the balance of the filing fee for this mandamus action, and that it order counsel to show

cause why sanctions should not be imposed against him for violating the terms of Rule 11(b),

---

    [4]    The U.S. Citizenship and Naturalization Handbook explains the origin and scope of 8 U.S.C. § 1429, which bars consideration of an application for naturalization once deportation or removal proceedings have commenced.  It provides as follows:

    The logic of this provision derives from a desire of Congress to prevent a race to a final decision between the deportability and naturalization adjudicators.  Prior to the enactment of this provision, the practice was for both the deportation and naturalization processes to proceed along until either the court naturalized the Plaintiff or the service succeeded in deporting him or her, whichever happened first.  The intention of Congress in enacting this provision was to resolve the race by creating a "priority" provision.  The Attorney General was given the power to choose either to allow the naturalization to proceed or to commence deportation proceedings and stay naturalization.  In other words, Congress gave the Attorney General the power to institute or to withhold the institution of deportation proceedings, in order to allow a deportable noncitizen to proceed with naturalization.

U.S. Citizenship and Naturalization Handbook, § 7:14, available on Westlaw at USCITNAT § 7:14.

Federal Rules of Civil Procedure.[5]

A copy of this recommendation will be transmitted to counsel for Plaintiff Pedro Montes Rodriguez.

Signed this 14th day of April, 2005.

_Wm. F. Sanderson, Jr._

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten days after being served with a copy of this recommendation.  Pursuant to Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten-day period may bar a _de novo_ determination by the district judge of any finding of fact or conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.

_____

[5]     Due to the emergency character of Montes-Rodriguez's pleading the magistrate judge has given it expedited consideration.  The allegations made in the pleading show a distinct lack of candor, conveying the impression that Plaintiff has exhibited good moral character both prior to and subsequent to his examination on or about July 31, 1990.  But for the remark that he was scheduled for a deportation hearing on April 21, 2005, none of the subsequent events would have been made known to the court.  As related at page 4 of this recommendation, mandamus is not available as a matter of law to compel CIS or its predecessor INS to administer the oath of citizenship.  Moreover, as is made clear under the cases cited at p. 7 of this recommendation (see also n. 4, _supra_) commencement of deportation (removal) proceedings precludes naturalization of an alien.

8